ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| IN RE<br><br>ING. ÁNGEL RODRÍGUEZ SÁNCHEZ<br><br>Recurrente | **TA2026RA00063** | *REVISIÓN ADMINISTRATIVA* procedente de la Junta de Gobierno del Colegio de Ingenieros y Agrimensores de Puerto Rico<br><br>Caso Núm.:<br>Q-CE-20-003<br><br>Sobre:<br>Querella Por Violación al Canon Núm. 10 de Ética |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Rodríguez Flores.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de junio de 2026.

Comparece ante nos el Ing. Ángel Rodríguez Sánchez (Ing. Rodríguez o "el recurrente") y nos solicita que revisemos una *Resolución* emitida por la Junta de Gobierno del Colegio de Ingenieros y Agrimensores de Puerto Rico (Junta de Gobierno) notificada el 13 de enero de 2026. Mediante el referido dictamen, la Junta de Gobierno confirmó la determinación emitida por el Tribunal Disciplinario y de Ética Profesional del Colegio de Ingenieros y Agrimensores de Puerto Rico (Tribunal Disciplinario), por consiguiente, fue sancionado mediante la suspensión de su colegiación por el término de un (1) año y le ordenó acreditar haber tomado un curso de ética de no menos de cuatro (4) horas.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la *Resolución* recurrida.

---

[1] Ver Orden Administrativa OATA-2026-044 del 4 de mayo de 2026.

# I.

El 26 de marzo de 2024, el Ing. Erasto García Pérez (Ing. García), Director Ejecutivo del Colegio de Ingenieros y Agrimensores de Puerto Rico presentó una *Querella* contra el Ing. Rodríguez en el Tribunal Disciplinario.[2] En esta, alegó que el recurrente había violado el Canon 10 de su profesión, a raíz de una *Sentencia* emitida el 30 de noviembre de 2022 por el Tribunal de Apelaciones,[3] en la cual se confirmó la determinación de la Junta de Planificación quien revocó un permiso otorgado por el Ing. Rodríguez al identificar deficiencias en la documentación del expediente, ausencia de prueba de legalidad de la estructura y una escritura de titularidad incompleta. Por ello, solicitó fuera declarada ha lugar la querella e impusiera las sanciones correspondientes.

Luego de varias incidencias procesales, el 5 de septiembre de 2025, el Tribunal Disciplinario notificó una *Resolución*,[4] en la cual emitió las siguientes determinaciones de hechos:

> 1. El Ing. Ángel Rodríguez Sánchez parte Querellada, es ingeniero licenciado bajo el número 16102 y su colegiación se encuentra activa.

---

[2] *Querella*, págs. 14-17 en la entrada núm. 3 del apéndice en el Sistema Unificado de Manejo y Administración de CASOS (SUMAC).
[3] El caso atendido por el Tribunal de Apelaciones sobre el cual hace referencia es el **KLRA202200565**. En síntesis, un Panel hermano determinó que: (1) en el informe de auditoría final emitido por la Junta de Planificación, surgía evidencia suficiente para rebatir la presunción de corrección y validez del permiso; (2) la Junta podía comenzar la investigación *motu proprio*, y que el término de noventa días (90) para efectuar auditorías aplicaba, únicamente, a las auditorías aleatorias, y no a aquellas que fueran presentadas mediante querella; (3) al recurrente se le notificó sobre los hallazgos de las presuntas faltas y se le concedió término para responder a dichos hallazgos, por lo que se le garantizó el debido proceso de ley; (4) la decisión se basó en el expediente administrativo; (5) el Consorcio CCVS12 era quien poseía la autoridad para presentar la querella y solicitar una auditoría ante la Junta. Por lo tanto, concluyó que la determinación de la Junta había sido correcta y que no había actuado de manera arbitraria, ilegal, irrazonable o fuera del marco de sus poderes.
[4] *Resolución*, págs. 18-37 en la entrada núm. 3 de SUMAC.

2. Que el predio para el cual el Querellado fue contratado para brindar sus servicios profesionales, es el lote 41 del terreno ubicado en el sector Camino del Indio de la comunidad Las Mareas en Salinas.

3. Para el año 2019, el Querellado visitó el lote 41 del terreno ubicado en el sector Camino del Indio de la comunidad Las Mareas en Salinas y tomó fotografías de la propiedad y alrededores, entre las que se encuentra un hidrante del servicio de agua potable, así como infraestructura y contadores para agua potable y energía eléctrica, estos últimos pertenecientes al lote 41.

4. Para el año 2019, durante la visita inicial del Querellado al lote 41, confirmó que los predios existían propiedades, contadores de energía eléctrica, contadores de acueductos e hidrantes contra incendio.

5. Que sobre el Permiso de Uso 2016-101211-PUS-ASE156310 de Aibonito para un predio en Salinas, de la prueba presentada en este caso, no se demostró que el Querellado estuvo relacionado con el mencionado permiso para la instalación de utilizades de energía eléctrica.

6. Que el 3 de septiembre de 2019, el Querellado autorizó el permiso 2019-279203-PUS-065158, para el lote 41, a nombre de Miguel A. Flores Torres, para la dirección Camino Los Indios, lote 41, La mareas en el Municipio de Salinas, Puerto Rico.

7. Que dicho Permiso de Uso 2019-279203-PUS-06518, es un Sub-Permiso de cambio de dueño, para la solicitud de Servicio de agua potable (AAA) para uso residencial. Se demostró que el mencionado permiso no era de construcción.

8. Que la propiedad antes mencionada, pertenece a la parcela 439-000-010-01, con su correspondiente número de catastro, 439-000-010-01-706.

9. Que el Permiso de uso 2019-279203-PUS-06518 expedido por el Querellado, es para una propiedad en zona protegida con calificación de Preservación de Recursos (PR) en 98%, Área de Desarrollo (AD) en 1% y Conversación de Recursos (CR) en 1%.

10. Que la propiedad para la cual el Querellado expidió el permiso de uso está en un área protegida según el Departamento de Recursos Naturales.

11. Para el año 2019, durante la visita inicial del Querellado al lote 41, el mismo contaba con servicio de energía eléctrica pero no con servicio de agua potable.

12. Que el permiso de uso expedido por el Querellado fue revocado según surge de la sentencia declaratoria del TPI-Guayama.

13. Que los foros concernientes, administrativos y judiciales, determinaron que el Querellado no cumplió con las leyes y reglamentos para la validez del permiso que autorizó.

Así pues, el Tribunal Disciplinario concluyó que, conforme a la prueba presentada, el Ing. Rodríguez incumplió sus deberes profesionales respecto al Canon 10 de los Cánones de Ética. Señaló que, el recurrente autorizó el Permiso de Uso 2019-279203-PUS-06518 para una propiedad en zona protegida aun cuando tenía conocimiento de que dicha zona estaba reservada y protegida. Asimismo, dispuso que según la prueba presentada, el Ing. Rodríguez no cumplió con las leyes y reglamentos para el cual autorizó el permiso. Finalmente, señaló que el permiso de uso había sido revocado por las autoridades competentes al no cumplir con sus responsabilidades para determinar que el permiso había sido expedido conforme a la Ley 161-2009. Por ello, como medida disciplinaria le impuso una suspensión de la Colegiación por un (1) año y le ordenó a participar en un curso de ética de cuatro (4) horas o más de duración.

En desacuerdo, el 25 de septiembre de 2025, el Ing. Rodríguez presentó una *Moción de Reconsideración*.[5] Sin embargo, el 29 de septiembre de 2025, el Tribunal Disciplinario la denegó.[6]

---

[5] *Moción de Reconsideración*, págs. 38-53 en la entrada núm. 3 de SUMAC.
[6] *Orden*, pág. 54 en la entrada núm. 3 de SUMAC.

Aun así, el 16 de octubre de 2025, el recurrente presentó una *Solicitud de Revisión* ante la Junta de Gobierno.[7] Mediante dicho recurso solicitó la revisión de la *Resolución* notificada el 5 de septiembre de 2025 por el Tribunal Disciplinario. Al fundamentar la referida solicitud, el Ing. Rodríguez resaltó los argumentos previamente esbozados en su petitorio de reconsideración. En particular, destacó que se le había violado su debido proceso, al no atender adecuadamente su planteamiento de desestimación; al resolver la controversia basándose en determinaciones previas de agencias y tribunales fundadas en hechos erróneos; al concluir que había incurrido en una violación al Canon 10 de Ética; y solicitó la revocación de la sanción o la reducción del término de suspensión.

Luego de ello, el 13 de enero de 2026, la Junta de Gobierno notificó la *Resolución* recurrida. Tras evaluar la solicitud instada por el Ing. Rodríguez, concluyó que los errores señalados no ameritaban la revocación de la *Resolución*. Determinó que el procedimiento administrativo cumplió rigurosamente con las garantías constitucionales del debido proceso de ley, que las alegaciones sobre apreciación de prueba y conclusiones del Tribunal Disciplinario no demostraron error manifiesto, ni base suficiente para sustituir el criterio del foro especializado, que la prueba de referencia había sido debidamente admitida y que la evaluación de la evidencia efectuada por el Tribunal Disciplinario estuvo fundamentada en el récord. En cuanto a la sanción bajo el Canon 10 de Ética, resolvió

---

[7] *Solicitud de Revisión*, págs. 55-66 en la entrada núm. 3 de SUMAC.

que conforme al derecho aplicable, bastaba con demostrar el incumplimiento del Profesional Autorizado con el marco legal y reglamentario aplicable, al emitir el permiso, sin que hubiera sido indispensable la prueba de "maldad", fraude o intención dolosa. Por ello, la Junta de Gobierno ratificó la determinación del Tribunal Disciplinario al sancionar al recurrente mediante la suspensión de su colegiación por un (1) año y tener que cumplir con el curso de ética.

Aun inconforme, el 12 de febrero de 2026, el Ing. Rodríguez presentó el recurso de epígrafe y planteó los siguientes señalamientos de error:

> Erró LA Junta de Gobierno del Colegio de Ingenieros y Agrimensores de Puerto Rico (Junta de Gobierno) al no reconocer las violaciones al debido proceso de ley en relación con la presentación de la querella Q-CE-24-003, y todo el proceso llevado a cabo por el Tribunal Disciplinario y de Ética Profesional del Colegio de Ingenieros y Agrimensores de Puerto Rico (TDEP), en contra del Ing. Ángel Rodríguez Sánchez.
>
> Erró la Junta de Gobierno al confirmar como correctas las acciones del TDEP, al tomar conocimiento judicial, y considerar como correctas y ciertas, alegaciones previamente consideradas erróneamente, sin tomar en consideración la prueba presentada por el recurrente.
>
> Erró la Junta de Gobierno al confirmar como correctas las acciones del TDEP, al admitir prueba basada en prueba de referencia y prueba cuya autenticación y admisibilidad fue cuestionada oportunamente por el recurrente.
>
> Erró la Junta de Gobierno al confirmar como correctas las acciones del TDEP, quien determinó que el recurrente había violado el Canon 10, de los Cánones de Ética de Ingenieros y Agrimensores del Colegio de Ingenieros y Agrimensores de Puerto Rico (Cánones de ética) habiendo ausencia total de prueba de intención o dolo por parte del recurrente.

El 17 de febrero de 2026, emitimos una *Resolución* mediante la cual le concedimos a la parte recurrida el

término dispuesto en el Reglamento de este Tribunal para que presentara su alegato en oposición.

El 23 de febrero de 2026, el recurrente presentó una *Moción en Solicitud de Autorización y Para Someter Regrabación*.

Así pues, el 24 de febrero de 2026, emitimos una *Resolución* en la cual informamos se autorizaba la preparación de una transcripción de la prueba oral, la cual debía estar estipulada por ambas partes. Por lo tanto, se le concedió a la parte recurrida hasta el 10 de abril de 2026, para que presentara la referida transcripción mediante una moción conjunta.

Posteriormente, el 17 de marzo de 2026, el Colegio de Ingenieros y Agrimensores de Puerto Rico presentó una *Moción de Desestimación de Recurso por ser Frívolo*. En esencia, sostuvo que el recurrente omitió informar sobre hechos que demostraban la duplicidad de recursos y su reiterado intento de justificar su incumplimiento con las leyes y reglamentos aplicables a su profesión.

Luego de varias incidencias procesales, el 30 de abril de 2026, emitimos una *Resolución* mediante la cual concedimos una prórroga final y perentoria hasta el 11 de mayo de 2026, para que las partes completaran la orden sobre la transcripción de la prueba oral estipulada.

No obstante, el 9 de junio de 2026, emitimos una *Resolución* en la cual informamos que dábamos por perfeccionado el recurso, y se tenía por renunciada la presentación de la transcripción de la prueba oral debido al incumplimiento con el término para presentarla.

Así pues, perfeccionado el recurso, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

## II.

### -A-

Las determinaciones finales de las agencias administrativas están sujetas a la revisión judicial del Tribunal de Apelaciones. 4 LPRA 24u. La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) autoriza expresamente la revisión de las decisiones, órdenes y resoluciones finales de los organismos administrativos. 3 LPRA sec. 9671. La revisión judicial tiene el objetivo de asegurar que las agencias actúen conforme a las facultades concedidas por ley. A su vez, los tribunales revisores debemos conceder deferencia a las decisiones de las agencias, debido a su experiencia y conocimiento especializado sobre los asuntos ante su consideración. Los dictámenes de las agencias gozan de una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. *Oficina de Ética Gubernamental v. Martínez Giraud,* 210 DPR 79 (2022); *Vélez Rodríguez v. Administración de Reglamentos y Permisos,* 167 DPR 684, 693 (2006).

La parte que impugna judicialmente las determinaciones de hechos de una agencia tiene el peso de demostrar que no están basadas en el expediente o que las conclusiones del foro administrativo son irrazonables. La razonabilidad es el criterio rector al momento de pasar juicio sobre la decisión de una agencia. La revisión judicial está limitada a evaluar si la agencia actuó arbitraria, ilegalmente, de forma

irrazonable o abusó de discreción. *Oficina de Ética Gubernamental v. Martínez Giraud, supra; Comisión Ciudadanos v. GP Real Property,* 173 DPR 998, 1013 (2008).

La evidencia sustancial en la que debe estar basada la determinación administrativa, ha sido definida jurisprudencialmente como aquella que es relevante y que una mente razonable podría aceptar como adecuada para sostener una conclusión. Sin embargo, esta aceptación no podrá estar sostenida por un ligero destello de evidencia o por simples inferencias. Las determinaciones de derecho de las agencias son revisables en todos sus aspectos. *Oficina de Ética Gubernamental v. Martínez Giraud,* supra; *Otero v. Toyota,* 163 DPR 716, 728 (2005).

La revisión se ciñe a determinar si: (1) el remedio concedido por la agencia fue el apropiado, (2) las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas. El respeto a la resolución administrativa se sostiene hasta que no se presente evidencia suficiente para derrotar la presunción de legalidad. *Oficina de Ética Gubernamental v. Martínez Giraud,* supra.

La deferencia a la interpretación que las agencias hacen sobre las leyes que le corresponden poner en vigor, cede cuando erró al aplicar la ley; actuó de forma arbitraria, irrazonable o ilegalmente; o lesionó derechos constitutivos fundamentales. El criterio administrativo no prevalece, cuando la interpretación estatutaria que realiza la agencia provoca un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y con la política pública

promovida. *Oficina de Ética Gubernamental v. Martínez Giraud*, supra.

De otra parte, nuestro ordenamiento jurídico establece que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Art. II, Sec. 7 Const. PR, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. En virtud de dicha protección se procura que toda persona tenga un proceso justo con todas las debidas garantías que ofrece la ley en el ámbito judicial como en el administrativo. *Com. Elect PPD v. CEE et al.,* 205 DPR 724, 743 (2020); *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012), citando a *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995). Ahora bien, en los procedimientos de naturaleza administrativa, la garantía del debido proceso de ley no constituye una camisa de fuerza que prive a la agencia de dirigir a sus procesos de forma justa, práctica y flexible. *Katirias's Café v. Mun. de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Almonte et al. v. Brito,* 156 DPR 475, 481 (2002).

En aras de salvaguardar este derecho, en su vertiente procesal, la Sección 3.1(a) de la LPAU, 3 LPRA sec. 9641, provee los siguientes derechos: (a) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte, (b) derecho a presentar evidencia, (c) derecho a una adjudicación imparcial, y (d) derecho a que la decisión sea basada en el expediente. Véase, además: J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* 5ta ed., San Juan, SITUM, 2023, pág. 228.

A los fines de permitir un procedimiento flexible respecto a la presentación de la prueba a nivel

administrativo, la Sección 3.13(e) de la LPAU, *supra*, dispone que "[l]as Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento."  3 LPRA sec. 9653.

A la luz de esta normativa, se evitan las trabas procesales que ocurren en los tribunales de justicia, y a su vez, se propicia que las personas puedan participar en los procesos administrativos.  A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5ta ed., San Juan, SITUM, 2023, pág. 228.  Véanse, además: *Otero v. Toyota,* 163 DPR 716, 733 (2005); *Martínez v. Tribunal Superior*, 83 DPR 717, 720 (1961).

-C-

La Ley Núm. 319 de 15 de mayo de 1938, según enmendada, mejor conocida como *La Ley del Colegio de Ingenieros y Agrimensores de Puerto Rico*, 20 LPRA secc. 731 *et seq*. (Ley Núm. 319-1938), fue promulgada con el fin de determinar la organización del Colegio de Ingenieros y Agrimensores de Puerto Rico (CIAPR) y especificar sus funciones y deberes.  Es en virtud de dicho estatuto que se constituye a los profesionales con derecho a ejercer la ingeniería o la agrimensura en el Estado Libre Asociado de Puerto Rico en entidad jurídica o corporación cuasi pública bajo el nombre de Colegio de Ingenieros y Agrimensores de Puerto Rico, 20 LPRA secc. 731.  En la Sección 2 de la Ley Núm. 319-1938, se desglosan las facultades de dicho organismo.  En lo pertinente dispone lo siguiente:

> El Colegio de Ingenieros y Agrimensores de Puerto Rico tendrá facultad:

[…]

(g) Para adoptar o implantar los cánones de ética profesional que regirán la conducta profesional de los ingenieros y agrimensores los cuales serán incorporados en el Reglamento de la Junta Examinadora de Ingenieros y Agrimensores de Puerto Rico.

(h) Para recibir e investigar las quejas que se formulen respecto a la conducta de los miembros en ejercicio de la profesión, teniendo la oportunidad de remitirlas a la Junta de Gobierno para que actúe.

[…]

(k) Para recibir e investigar las quejas que se formulen respecto a situaciones que puedan resultar en el ejercicio ilegal de las profesiones, de las violaciones relacionadas con éstas, y de existir evidencia a tales efectos, si se tratare de personas no colegiadas, proceder ante las autoridades competentes a los fines de que se cumplan las leyes relativas al ejercicio de las profesiones. 20 LPRA secc. 732.

De otra parte, en el *Reglamento del Colegio de Ingenieros y Agrimensores de Puerto Rico*, conforme a la Ley Núm. 319-1938, *supra*, establece los fines principales de esta institución. Capítulo I, Artículo 1 del Reglamento del CIAPR. Entre estos se encuentra: (1) fomentar el bienestar de la comunidad; (2) contribuir al adelanto y defensa de los profesionales de ingeniería y agrimensura y; (3) propender al mejoramiento de ejercicio profesional de sus miembros. Capítulo I, Artículo 2 del Reglamento del CIAPR. Conforme a los fines previamente señalados y cónsono con los derechos conferidos por ley en el Capítulo I, Artículo 3 del Reglamento, dispone que corresponde al CIAPR, en lo pertinente, promulgar y poner en vigor los Cánones de Ética Profesional; adoptar un medio rápido, eficaz, justo y razonable para la ventilación de querellas radicadas contra sus miembros; y propulsar gestiones encaminadas a evitar la práctica ilegal de las

profesiones. Igualmente, el reglamento provee para que interponga las acciones administrativas o judiciales correspondientes en estos casos.

-D-

El *Reglamento del Tribunal Disciplinario y de Ética Profesional* (Reglamento) fue adoptado al amparo de la Ley Núm. 319-1938, *supra*, y el Capítulo VII del Reglamento del CIAPR. Según surge del Reglamento, el Tribunal Disciplinario podrá en su función cuasi judicial, imponer sanciones. Sobre esto en el Artículo 51 del Reglamento, *supra*, dispone:

> En la resolución final que se emita, el Tribunal Disciplinario y de Ética Profesional impondrá al querellado las sanciones que se ameriten en atención a su falta. El Tribunal Disciplinario y de Ética Profesional, en el ejercicio de sus facultades, podrá imponer al Querellado, entre otras, todas o algunas de las siguientes medidas disciplinarias; (a) amonestación (b) reprimenda (c) sanciones económicas; (d) suspensión provisional de su colegiación bajo los términos y condiciones que el Tribunal Disciplinario determinen pertinentes y (e) suspensión indefinida de su colegiación.

Además, el Artículo 53 del Reglamento, *supra*, regula el procedimiento que debe seguir el querellado de estar inconforme con una resolución final del Tribunal Disciplinario. Así pues, tendrá dentro del término de veinte (20) días calendario a partir de la notificación y archivo en autos de la referida resolución, para presentar una solicitud de revisión por escrito ante la Junta de Gobierno. *Íd.* De igual forma, en el Artículo 54, *supra*, atiende aquello relacionado a los términos a seguir por la Junta de Gobierno al considerar una solicitud de revisión. También surge del Reglamento los criterios para la consideración de la solicitud de

revisión por la Junta de Gobierno. En el Artículo 55, *supra*, dispone que:

> Cuando la Junta de Gobierno considere una solicitud de revisión, esta será evaluada de acuerdo a los siguientes criterios:
>
> a. El descubrimiento de nueva evidencia esencial relacionada con el caso que afecte la decisión final emitida y que, a pesar de una diligencia razonable, no pudo haber sido descubierta con antelación a la vista de la Querella.
>
> b. La posible comisión de un error sustantivo o de procedimiento por el Tribunal Disciplinario y de Ética Profesional, que resulte en que la decisión es contraria a derecho.
>
> c. La necesidad de corregir la decisión de forma que el interés de la justicia quede mejor protegido.
>
> d. La posibilidad de que la decisión haya sido el producto de fraude. La Junta de Gobierno, de considerarlo necesario, podrá citar al Querellado, al Querellante y al Oficial de Interés de la Profesión, pero no admitirá la presentación de nueva prueba salvo que se acredite que la misma no pudo ser razonablemente presentada durante la vista ante el Tribunal Disciplinario y de Ética Profesional tal y coma se expone en el inciso (a) anterior.

**-E-**

Los *Cánones de Ética del Ingeniero y Agrimensor*, según aprobados en Asamblea Anual celebrada el 8 de agosto de 2009, establecen los preceptos a seguir en aras de mantener y enaltecer la integridad, el honor y la dignidad de dichas profesiones de acuerdo con las más altas normas de conducta moral y ética profesional. En lo pertinente al recurso ante nos, establecen que tanto el ingeniero como el agrimensor, en cumplimiento de sus deberes profesionales, deberán "Canon 10: Conducirse y aceptar realizar gestiones profesionales únicamente en conformidad con las leyes y los reglamentos aplicables con estos cánones."

**III.**

En el caso de autos, el Ing. Rodríguez nos presenta cuatro (4) señalamientos de error, no obstante, luego de evaluarlos estos serán discutidos de manera conjunta. En síntesis, el recurrente alega que incidió la Junta de Gobierno al confirmar la determinación del Tribunal Disciplinario, debido a que, se vio afectado su debido proceso de ley al admitirse prueba de referencia, al haber adoptado dictámenes previos erróneos, sin tomar en consideración la prueba que presentó, y que no se demostró que actuara con dolo o intención de defraudar bajo el Canon 10, para que le impusieran la sanción. El análisis del expediente nos adelanta que ninguno de los errores fue cometido.

El recurrente sostiene que el proceso administrativo adoleció de fallas constitucionales debido a la admisión de prueba de referencia y a la falta de especificidad en la súplica de la *Querella*. No le asiste razón. Es norma firmemente establecida que el debido proceso de ley en el ámbito administrativo es de naturaleza flexible*. Katiria's Café v. Mun. de San Juan*, supra. Las exigencias constitucionales mínimas buscan garantizar que la parte querellada tenga una notificación adecuada de los cargos y una oportunidad a defenderse. Secc. 3.1 de la LPAU, *supra*; *Com. Elect PPD v. CEE et al.,* supra. A su vez, el Artículo 40 del Reglamento del Tribunal Disciplinario,[8] consagra una flexibilidad evidenciaria, relevando al juzgador de la

---

[8] Artículo 40: Aplicación de las Reglas de Evidencia
Excepto en la medida en que se dispone más adelante, las Reglas de Evidencia y Procedimiento Civil que se aplican en los tribunales de Puerto Rico no serán aplicables a las vistas. El oficial que presida la vista podrá utilizar los principios fundamentales de las mismas, interpretándolas en la forma más liberal posible y sin sujeción a tecnicismos.

aplicación rigurosa de las Reglas de Evidencia y Procedimiento Civil.

Por lo tanto, según surge del expediente el recurrente contestó la querella, compareció a la vista evidenciaria asistido por abogado, contrainterrogó a testigos y presentó prueba, por consiguiente, se descarta cualquier estado de indefensión material. A su vez, la alegada vaguedad en la *Querella* por no detallar la sanción exacta carece de mérito, puesto que, los Artículo 4 y 51 del Reglamento del Tribunal Disciplinario establecen las facultades que tendrá el Tribunal para imponer sanciones, por lo que, el recurrente estaba advertido de las consecuencias éticas, sin que estas fueran detalladas en la súplica de la *Querella*. Además, la admisibilidad de las resoluciones y sentencias emitidas por la Junta de Planificación y el Tribunal de Apelaciones fue correcta, puesto que, se tratan de documentos públicos e institucionales vinculados a pleitos donde el recurrente fue parte, su confiabilidad es intrínseca y su uso no vulnera derecho procesal alguno.

En cuanto al argumento respecto a que la Junta de Gobierno tomó conocimiento judicial de dictámenes previos y no evaluó la prueba que presentó, es inoperante bajo la doctrina de cosa juzgada. El hecho medular sobre la ilegalidad del permiso ya fue adjudicado con carácter de finalidad y firmeza por este Tribunal en los casos KLRA202200565 y KLAN202400077. Por ello, no erró el Tribunal Disciplinario al respetar la realidad jurídica.

Finalmente, el recurrente alega que hubo ausencia total de prueba al no demostrarse dolo, malicia o intención de defraudar. No obstante, la alegación por

parte del Ing. Rodríguez es errónea. El Canon 10 de los Cánones de Ética impone un mandato imperativo de carácter estrictamente objetivo: conducir toda gestión profesional en estricta conformidad con las leyes y reglamentos aplicables. El fin primordial es proteger el interés público y la fe pública, no castigar un estado mental delictivo o fraudulento.

Por ende, la falta ética surge tan pronto se constata que el Profesional Autorizado emitió un permiso en violación a la Ley y Reglamento. La negligencia crasa y la falta de diligencia en el descargo de sus funciones bastaron para activar la acción disciplinaria. Por consiguiente, la suspensión de un (1) año fue una medida razonable y proporcionada a la gravedad ante la falta ambiental incurrida.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la determinación recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones